UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-5337-DMG (SKx)** | Date | November 2, 2020 |
| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 1 of 11 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFF JOSE BERMEJO'S MOTION TO REMAND [11]**

**I.
FACTUAL AND PROCEDURAL BACKGROUND**

On May 14, 2020, Plaintiff Jose Bermejo filed a Class Action Complaint in Los Angeles County Superior Court against Defendant Laboratory Corporation of America ("LabCorp"), alleging the following state-law causes of action: (1) failure to pay all wages; (2) failure to keep accurate payroll records; (3) failure to pay wages upon ending employment; and (4) unfair competition under California Business and Professions Code § 17200 *et seq.* [Doc. # 1-2].

On June 3, 2020, Plaintiff filed his First Amended Complaint ("FAC") in state court, adding the following causes of action: (5) failure to provide meal periods; (6) failure to provide rest periods; and (7) failure to indemnify for expenditures. *See* Joint Notice of Lodging, Ex. A [Doc. # 9-1.] On June 15, 2020, Defendant removed the action to this Court on the basis of the original Complaint, asserting jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). Notice of Removal at 1–2 [Doc. #1].[1] On July 10, 2020, the parties jointly requested that the FAC be the operative complaint in this action. [Doc. # 9.] After securing the Court's approval, Plaintiff filed the FAC on July 20. [Doc. # 16].

Plaintiff brings this action on behalf of the following proposed class: "all non-exempt employees, employed or formerly employed by, Defendant [LabCorp] in the positions of service rep-carrier, and related positions in the State of California from February 25, 2016, until judgment in this matter." FAC at ¶ 1.

On July 15, 2020, Plaintiff moved to remand the action to state court on the basis that Defendant failed to: (1) timely file the notice of removal; (2) establish diversity of the parties;

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-5337-DMG (SKx)** | Date | November 2, 2020 |
| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 2 of 11 |

and (3) demonstrate the aggregate amount in controversy exceeds the jurisdictional minimum. Motion to Remand ("MTR") [Doc. # 11]. The MTR is now fully briefed. Opp. [Doc. # 23]; Reply [Doc. # 25].

For the reasons set forth below, the MTR is **DENIED**.

## II.
## LEGAL STANDARD

CAFA affords district courts jurisdiction "over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)). Pursuant to 28 U.S.C. section 1441(a), an action may be removed from a state court to a federal district court if the latter would have had "original jurisdiction" over the action had it been filed in that court. Generally, courts determine whether an action is removable based on the complaint as it existed at the time of removal. 28 U.S.C. § 1332(d)(7); *Doyle v. OneWest Bank*, 764 F.3d 1097, 1098 (9th Cir. 2014).

If a complaint does not specify a particular amount of damages and the plaintiff challenges jurisdiction after removal, the removing defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Id*. at 1197 ("Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction."); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992) ("If it is unclear what amount of damages the plaintiff has sought ... then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount."). In such cases, a district court "may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)). "[R]emoval 'cannot be based simply upon conclusory allegations where the [complaint] is silent'" as to the amount of damages. *Id*. (quoting *Allen*, 63 F.3d at 1335). Further, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *See Ibarra*, 775 F.3d at 1197.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-5337-DMG (SKx)** | Date | November 2, 2020 |
| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 3 of 11 |

# III.
# DISCUSSION

Plaintiff argues that remand is appropriate because (1) Defendant's removal was untimely in that Defendant based its removal on Plaintiff's original Complaint instead of the FAC; (2) the parties are not adequately diverse for the purposes of CAFA jurisdiction; and (3) Defendant does not prove by a preponderance of the evidence that the amount in controversy exceeds the $5 million jurisdictional threshold for CAFA. MTR at 2.

**A.     Timeliness**

A defendant must file a notice of removal within 30 days after receipt of the first pleading in the state action, through service or otherwise, that sets forth a removable claim. *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1223 (9th Cir. 2009) (citing 28 U.S.C § 1446(b)).

Defendant removed the action on June 15, 2020 based on the original Complaint. Plaintiff argues that the FAC superseded the original Complaint such that it should be treated as the operative pleading for purposes of section 1446(b), and so Defendant's failure to remove *the FAC* within 30 days of its filing makes the removal untimely. MTR at 11.

The removal statute provides that an amended pleading triggers the 30-day clock only "[i]f the case stated by the *initial pleading* is not removable[.]" 28 U.S.C. § 1446(b) (emphasis added). In this case, Plaintiff's allegations regarding the number of putative class members, diversity, and amount in controversy remained largely the same in both the Complaint and the FAC.[2] Accordingly, the CAFA elements were evident in the Complaint such that the FAC did not restart the removal clock. *See Sandpiper Management, LLC v. J.P. Morgan Chase & Co.*, No. 10-CV-1802, 2010 WL 4055567, at *2 (S.D. Cal. Oct. 15, 2010) ("Here, the basis for removal, Plaintiff's civil RICO claims, was evident in the original Complaint. Accordingly, the First Amended Complaint did not restart the removal clock."). Defendant's removal of the original Complaint was therefore proper and timely.

---

[2] Although the FAC added causes of action for failures to provide meal and rest periods, the original Complaint contained similar factual allegations, even though they were not asserted as independent claims. *See* Compl. at ¶ 36 ("Defendant refused and/or failed to promptly compensate Plaintiff and Plaintiff Class wages owed as a result of their failure to provide meal and/or rest periods."). Thus, Defendant was on notice of its potential exposure for these alleged violations upon the filing of the original Complaint.

| | | |
|---|---|---|
| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk KT |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5337-DMG (SKx)** | Date | November 2, 2020 |
|---|---|---|---|
| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 4 of 11 |

### B. Diversity of Citizenship

Plaintiff claims that the Doe defendants alleged in the FAC are pled with sufficient specificity as citizens of California to defeat diversity. MTR at 10. This argument misconstrues the type of diversity required in this action. "[U]nder CAFA, complete diversity is not required; 'minimal diversity' suffices." *Bridewell-Sledge v. Blue Cross of California*, 798 F.3d 923, 928 (9th Cir. 2015) (quoting *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007)). Section 1332(d) requires at least one member of a class of plaintiffs to be a citizen of a state different from *any* defendant. *See State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530–531 (1967). Here, Plaintiff is a citizen of California, and Defendant is a citizen of Delaware, its place of incorporation, and North Carolina, its principal place of business.[3] Rejali Decl., ¶¶ 3–4, Ex. 1 [Doc. # 23-3]. Even if the Doe defendants are citizens of California, the case has minimal diversity because Plaintiff and Defendant are citizens of different states.

### C. Amount in Controversy

Defendant claims that the amount in controversy is between $6,608,722.83 and $14,060,614.02, including attorneys' fees. Opp. at 28. Plaintiff argues that Defendant (1) failed to prove its assertions regarding the amount in controversy by a preponderance of the evidence, and (2) improperly assumed a 100% violation rate in its calculations.

Defendant was not required to submit proof in its Notice of Removal that the aggregate amount in controversy is at least $5 million. *Arias v. Residence Inn*, 936 F.3d 920, 925 (9th Cir. 2019) ( "a notice of removal 'need not contain evidentiary submissions'"). Once its amount in controversy estimate is challenged, however, Defendant is required to support its assertions with competent evidence. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) (citations omitted).

The Ninth Circuit has held the defendant's proper burden of proof to establish the amount in controversy requirement is the preponderance of the evidence standard. *Rodriguez v. AT & T Mobility Services LLC*, 728 F.3d 975, 977 (9th Cir. 2013). This standard requires a defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional threshold]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404

---

[3] Plaintiff contends that Defendant "conducts substantial business in California, operates multiple facilities throughout the State of California and all the events that the Complaint alleges occurred in the State of California," MTR at 8, but this does not sufficiently establish that Defendant's "nerve center" is in California. *See Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-5337-DMG (SKx) | Date | November 2, 2020 |
| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 5 of 11 |

(9th Cir. 1996). Defendant, therefore, bears the burden to demonstrate it is more likely than not that the amount in controversy exceeds $5 million.

### 1. Defendant's employee data is supported by the evidence.

A removing defendant "is permitted to rely on a chain of reasoning that includes assumptions" to establish the CAFA amount in controversy so long as such assumptions are "reasonable." *Arias*, 936 F.3d at 926–927. Assumptions are reasonable when they are founded upon the complaint's allegations and have "some reasonable ground underlying them." *Id.*

Plaintiff argues that the declarations of Joseph Martin and Saman Rejali, which Defendant provides to support its amount in controversy calculations, are insufficient because they do not set forth "summary judgment like evidence." Reply at 9–11.

Attached to the Martin Declaration are over 660 pages of data reports and spreadsheets. These documents include:

- A spreadsheet of Employee ID numbers and start dates for employees who held specific positions Defendant found to correspond to the class description in California from April 20, 2016 through June 15, 2020;
- Six reports containing job data for LabCorp non-exempt, hourly employees who held the same positions in California from April 20, 2016 through June 15, 2020; and
- Ten reports containing the average daily worked hours for LabCorp non-exempt, hourly employees who held the same positions in California from April 20, 2016 through June 15, 2020.

Martin Decl. at ¶¶ 4–6, Ex. A–C. Martin, an HR analyst for Defendant, used a business intelligence program to extract HR data from Defendant's timekeeping system to obtain the average daily hours worked by non-exempt employees. *Id*. at ¶ 6. Rejali, Defendant's counsel, then used the data prepared by Martin to obtain the total number of putative class members, the number of terminated putative class members, the average hourly rate per year, and the total number of days worked. Rejali Decl. at ¶¶ 5–12.

Plaintiff argues that Defendant's calculation of the number of total days worked is incorrect because Defendant failed to remove the hours worked by part-time employees—who are not part of the putative class—from its analysis of the total daily hours worked. Reply at 6. Rejali explains, however, that he ran a computer script and used Martin's job data spreadsheets

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-5337-DMG (SKx)** | Date | November 2, 2020 |
| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 6 of 11 |

to eliminate data for employees who are not putative class members from the Average Daily Hours Worked Data. Rejali Decl. ¶ 12. The spreadsheets only include data for full-time employees, as reflected in the column labeled "FULL_PART_TIME." Martin Decl., Ex. B. Therefore, Defendant properly made its estimates based on the average daily hours worked by putative class members instead of all employees. *Cf. Herrera v. Carmax Auto Superstores California, LLC*, No. 14-CV-776, 2014 WL 12586254, at *1 (C.D. Cal. June 12, 2014) ("[I]t is improper for a removing defendant to make estimates based on the average wage of all employees, rather than the average wage of putative class members.").

Although Plaintiff argues that Defendant's access to the records would have allowed it to determine the amount in controversy precisely, instead of providing basic calculations of estimates, Reply at 10, Defendant is not obligated to prove Plaintiff's case at any stage. *See Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–1205 (E.D. Cal. 2008) (a removing defendant is not obligated to "research, state, and prove the plaintiff's claims for damages."). Courts in this district routinely accept similar declarations from human resource professionals providing general payroll statistics as credible evidence establishing the jurisdictional threshold. *See Alvarez v. Office Depot, Inc.*, No. CV 17-7220-PSG (AFMx), 2017 WL 5952181, at *2 (C.D. Cal. Nov. 30, 2017) (collecting cases).[4] Therefore, the Court finds that Defendant's estimates are reasonably based on sufficient underlying data.

### 2. Defendant's assumed violation rates are reasonable.

Plaintiff argues that Defendant's calculations use an inappropriate 100% violation rate or otherwise assume an unreasonably high rate of violations. Reply at 5.

Courts have allowed a removing defendant who has produced summary-judgment-type evidence about facts within its knowledge "to make reasonable, conservative estimates about the frequency of the alleged violations based on the language used in the complaint." *Herrera*, 2014 WL 12586254, at *2 (citations omitted). The Court discusses whether the assumed violation rate is reasonable for each claim in turn.

---

[4] Plaintiff compares the Martin and Rejali declarations to those in *Davis v. Barney's, Inc.*, No. 18-CV-6627, 2018 WL 4940801 (C.D. Cal. Oct. 11, 2018), and *Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1122 (C.D. Cal. 2016), which the respective courts found to be insufficient. But in *Davis*, the declaration failed to include any information about the method used to arrive at the estimates, and did not attach a single business record or supporting document. 2018 WL 4940801, at *2. Similarly, in *Garcia* the five-page declaration contained only conclusory statements with approximate numbers and failed to submit the records reviewed to obtain the numbers. 207 F. Supp. 3d at 1122. Defendant's evidence here is far more robust.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-5337-DMG (SKx)** | Date | November 2, 2020 |
| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 7 of 11 |

**Unpaid Overtime**

Plaintiff alleges Defendant (1) "consistently" and "willfully" refused to pay Plaintiff and putative class members for "all hours worked, including, both regular and overtime" and (2) engaged in a "policy and practice" of not paying for hours worked in excess of eight hours in a day and/or in excess of forty hours in a week. FAC ¶¶ 4, 28.

Defendant relied on Plaintiff's use of the "policy and practice" language, as well as examples from several other recent district court cases, to assume a 20% to 40% violation rate. Opp. at 23 (citing *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *3 (C.D. Cal. Oct. 1, 2019); *Salazar v. PODS Enterprises, LLC*, 2019 WL 2023726, at *3–4 (C.D. Cal. May 8, 2019); *Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014)). Defendant's overtime claim calculations are as follows:

**20% Violation Rate**
2016-2017: 14,357 days worked x $26.09/day x 20% violation rate = $74,927.43
2017-2018: 103,166 days worked x $26.72/day x 20% violation rate = $551,360.51
2018-2019: 83,896 days worked x $27.41/day x 20% violation rate = $459,886.07
2019-2020: 95,982 days worked x $28.11/day x 20% violation rate = $539,693.17
                                                                            **Total = $1,625,867.17**

**40% Violation Rate**
2016-2017: 14,357 days worked x $26.09/day x 40% violation rate = $149,854.85
2017-2018: 103,166 days worked x $26.72/day x 40% violation rate = $1,102,721.02
2018-2019: 83,896 days worked x $27.41/day x 40% violation rate = $919,772.13
2019-2020: 95,982 days worked x $28.11/day x 40% violation rate = $1,079,386.33
                                                                            **Total = $3,251,734.34**

Opp. at 24.

Plaintiff argues that Defendant's methodology is confusing because it does not explain what the violation rate refers to. Reply at 5. The Court disagrees. Defendant's methodology clearly assumes one violation (*i.e.*, one hour of unpaid work) occurred during either 20% or 40% of the total days worked. Applied to a five-day workweek, a 20% rate of violation translates to one violation per five-day workweek, and a 40% violation rate would amount to two violations per workweek. The Court concludes that, given Plaintiff's allegations, a 20% violation rate is reasonable for purposes of calculating the value of Plaintiff's overtime claim. *See, e.g.*, *Kastler*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5337-DMG (SKx)** | Date | November 2, 2020 |
|---|---|---|---|
| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 8 of 11 |

2019 WL 5536198, at *4 (concluding that one hour of unpaid overtime per week was reasonable when the plaintiff alleged a "pattern and practice" of unpaid overtime); *Arreola*, 2014 WL 6982571, at *4 (finding one violation per week was reasonable based on allegation that employer had "a regular or consistent practice of violating employment laws that harmed each class member").[5]

**Meal and Rest Break Violations**

Plaintiff alleges that Defendant "consistently maintained and enforced . . . the unlawful practices and policies" of not permitting Plaintiff and putative class members to take meal and/or rest breaks or receive compensation in lieu thereof. FAC at ¶ 4. Defendant assumes, based on applicable statutes, that Plaintiff and the putative class members seek one hour of pay for each missed meal period and one hour of pay for each missed rest period during the relevant time period. Notice of Removal ¶ 16. Defendant estimates a 20% to 60% violation rate to calculate the amount in controversy for the Plaintiff's meal break claim as follows:

**20% Violation Rate**
2016-2017: 14,357 days worked x $17.40/day x 20% violation rate = $49,951.62
2017-2018: 103,166 days worked x $17.81/day x 20% violation rate = $367,573.67
2018-2019: 83,896 days worked x $18.27/day x 20% violation rate = $306,590.71
2019-2020: 95,982 days worked x $18.74/day x 20% violation rate = $359,795.44
                      **Total = $1,083,911.45**

**60% Violation Rate**
2016-2017: 14,357 days worked x $17.40/day x 60% violation rate = $149,854.85
2017-2018: 103,166 days worked x $17.81/day x 60% violation rate = $1,102,721.02
2018-2019: 83,896 days worked x $18.27/day x 60% violation rate = $919,772.13
2019-2020: 95,982 days worked x $18.74/day x 60% violation rate = $1,079,386.33
                      **Total = $3,251,734.34**

Opp. at 21. Defendant uses the same calculation for rest breaks, such that it estimates from **$2,167,822.89** ($1,083,911.45 meal breaks + $1,083,911.45 rest breaks) to **$6,503,468.68** ($3,251,734.34 meal breaks + $3,251,734.34 rest breaks) total in meal and rest break claims. *Id.*

---

[5] Plaintiff compares Defendant's estimated violation rates to those in *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1119–20 (C.D. Cal. 2010). In *Roth*, the court found the defendant's calculation of the overtime claim was unreasonable where the defendant assumed that every class member was denied three to five hours of overtime pay per five-day workweek. *Id.* But here, Defendant assumes one to two violations per week, not three to five.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-5337-DMG (SKx)** | Date | November 2, 2020 |
| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 9 of 11 |

      Defendant cites to several California district court cases that have held assumptions of 20% to 50% violation rates are reasonable in light of "policy and practice" allegations and allegations that defendants' "regularly" denied class member breaks. *See, e.g.*, *Elizarraz v. United Rentals, Inc.*, No. 18-CV-09533, 2019 WL 1553664, at *3–4 (C.D. Cal Apr. 9, 2019) (finding a 50% violation rate for missed meal periods and a 25% rate for missed rest periods to be reasonable); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding a 50% violation rate for missed break periods reasonable).

      Other than incorrectly claiming that Defendant utilized a 100% violation rate, Plaintiff does not rebut this analysis. Moreover, "while not required, Plaintiff has not offered any better estimate of the alleged violation rate, despite the fact that [he] most likely knows at least roughly how often [he] was not afforded the required meal breaks." *Lopez v. Adesa, Inc.*, No. 19-CV-1183, 2019 WL 4235201, at *3 (C.D. Cal. Sept. 6, 2019). Accordingly, the Court finds Defendant's more conservative 20% violation rate for the meal and break period claims to be reasonable.

### **Waiting Time Penalties**

      California Labor Code section 203 provides that employers who fail to timely pay all earned wages upon termination are subject to a fine equal to the employee's normal wages for each day the wages are late, up to a maximum of 30 days. Defendant estimates the potential waiting time penalties as follows:

> **2017-2018**
> $17.81/hr x 8 hrs/day x 30 days x 33 putative class members = $141,092.20
> **2018-2019**
> $18.27/hr x 8 hrs/day x 30 days x 37 putative class members = $162,255.98
> **2019-2020**
> $18.74/hr x 8 hrs/day x 30 days x 35 putative class members = $157,440.03
>                                         **Total = $460,788.20**

Opp. at 25. Defendant assumes that Plaintiff seeks damages for the maximum 30-day penalty period. Because Plaintiff does not allege that Defendant has paid any unpaid wages, Defendant's use of the maximum 30-day penalty is reasonable. *See Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Because no averment in the complaint supports an inference that [the unpaid wages] were ever paid, [plaintiff] cannot now claim class members may be awarded less than the statutory maximum.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5337-DMG (SKx)** | Date | November 2, 2020 |
|---|---|---|---|

| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 10 of 11 |
|---|---|---|---|

Defendant also assumes that Plaintiff alleges that all putative class members suffered at least one instance of unpaid wages during their employment. In other words, here Defendant does assume a 100% violation rate, which Plaintiff objects to because "[t]he 'pattern or practice' of doing something does not necessarily mean always doing something." Reply at 9 (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198–99 (9th Cir. 2015)). But for waiting time penalties, a 100% violation rate simply means that all terminated class members were not paid wages owed at least *one* time during the claim period. This assumption is entirely consistent with "practices and policies" of not paying wages owed. FAC at ¶ 4. It is also consistent with the assumptions that putative class members were not paid overtime or given breaks around once a week, which the Court accepted as reasonable in the discussion above. *See Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019 ("[I]f every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [defendant] during the statutory period was due unpaid wages." *Id*.

Accordingly, the Court finds Defendant's estimated total waiting time penalties are reasonable.

**Failure to Provide Accurate Wage Statements**

Plaintiff alleges that Defendant "willfully refus[ed] to furnish to Plaintiff and Plaintiff Class accurate itemized wage statements upon payment of wages." FAC at ¶ 4. Under Labor Code section 226(e), an employer may be fined $50 per pay period for the first such violation, and $100 per pay period for every subsequent violation, totaling no more than $4,000 per employee. The claims are subject to a one-year statute of limitations. Cal. Civ. Proc. Code § 340.

There were 26 pay periods for the year preceding the filing of the Complaint on April 20, 2020, and there have been roughly four pay periods since. Martin Decl. ¶ 3. In each pay period, approximately 350 class members received wage statements. Rejali Decl. ¶ 10. Defendant therefore claims that it may be exposed to as much as $1,032,500 for inaccurate wage statements:

$50 (1st pay period) + ($100 x 29 (subsequent pay periods)) = **$2,950**
$2,950 x 350 violations per pay period = **$1,032,500**

Opp. at 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-5337-DMG (SKx)** | Date | November 2, 2020 |
|---|---|---|---|
| Title | *Jose Bermejo v. Lab'y. Corp. of America* | Page | 11 of 11 |

Defendant assumes that each wage statement contained at least one inaccuracy. Similar to the waiting time penalties, given that Defendant can reasonably assume its alleged "practices and policies" of underpaying wages translate to about one overtime, meal break, and rest break violation each per week, every wage statement (covering a two-week period) likely contained an alleged error. *See Wheatley v. Masterbrand Cabinets, LLC et al.*, No. 18-CV-2127, 2019 WL 688209, at *7 (C.D. Cal. Feb. 19, 2019) ("The Court has already found it reasonable to assume one hour of unpaid overtime and multiple meal and rest break violations per week per class member. Because Plaintiff's wage statement claim is 'derivative of [his] allegation that Defendant failed to pay him and the putative class members for all hours worked' [], Defendant may reasonably assume every wage statement contained at least one inaccuracy.") (citation omitted).

\*   \*   \*

In sum, Defendant's total exposure for Plaintiff's allegations of unpaid wages and penalties on behalf of the putative class amounts to:

| | |
|---|---|
| Unpaid overtime (with 20% violation rate): | $1,625,867.17 |
| Meal and rest break violations (with 20% violation rate): | $2,167,822.89 |
| Waiting time penalties: | $460,788.20 |
| Wage statement penalties: | $1,032,500.00 |
| **Total:** | **$5,286,978.26** |

This total exceeds the $5 million amount in controversy threshold under CAFA. Accordingly, the Court has subject matter jurisdiction over the action.[6]

### IV.
### CONCLUSION

In light of the foregoing, Plaintiff's Motion to Remand is **DENIED**.

**IT IS SO ORDERED**.

---

[6] Because the amount in controversy requirement is satisfied without accounting for any potential attorneys' fees, the Court need not address the parties' arguments as to the size of the fees at stake.